[Civ. No. 3007. Fifth Dist. Sept. 1, 1978.]

GARY KASLAVAGE, Plaintiff and Appellant, v.
WEST KERN COUNTY WATER DISTRICT,
Defendant and Respondent.

## COUNSEL

Thon & Matz, Jeffrey A. Matz and Dean A. Jelmini for Plaintiff and Appellant.

Robert D. Patterson, Jr., for Defendant and Respondent.

## OPINION

**ANDREEN, J.***—Plaintiff-appellant Gary Kaslavage was swimming in a canal managed and controlled by the Buena Vista Water District (herein called Buena Vista) on March 30, 1975. The canal is traversed by an irrigation pipe owned by respondent West Kern County Water District

*Assigned by the Chairperson of the Judicial Council.

(herein called West Kern). West Kern is a local public entity within the meaning of Government Code section 900.4. When diving from the pipe into the canal the plaintiff struck his head resulting in serious injuries.

Plaintiff learned of the fact that West Kern owned the pipe after the 100-day time limit within which a claim must be filed (Gov. Code, § 911.2). An application for leave to present a late claim was filed on September 23, 1975. The application was denied by West Kern on October 15, 1975.

An amended petition for an order relieving petitioner from the effect of the late filing of the claim was filed with the superior court on March 16, 1976. It was denied. Plaintiff appeals from this order, alleging that he should have been granted relief on the grounds that the failure to present a timely claim was through mistake, inadvertence, surprise or excusable neglect. We agree and reverse.

## FACTS

On June 6, 1975, within the 100 days, plaintiff's counsel sent an investigator, Dean Jelmini, to investigate the accident. Jelmini was in his last year at law school and had worked as an investigator for approximately one year. In the company of an individual knowledgeable about the situs of the accident, he drove to the scene where he observed the ditch and the pipe. He also noticed a huge refinery apparently belonging to Atlantic Richfield located one to one and one-half miles away.

The investigator checked the Kern County Assessor's office and found that Tenneco West, Inc. (herein called Tenneco) was the owner of the land. He found the canal but not the pipe listed in the assessor's records. He was informed by an employee at the assessor's office that easements for other than main lines would not be listed. After checking with the California Highway Patrol and a sheriff's substation and Buena Vista and still another irrigation district, he learned that the canal was controlled by Buena Vista. In his affidavit he stated that he telephoned Buena Vista and talked to an unidentified man regarding who had control over the canal. But during his testimony at the hearing on the petition, he stated he inquired as to who had control of the canal *and the pipe*. He explained the failure to list this in his declaration as an oversight. He also located the name of another district that owned land over which the canal passed. Claims for damages were filed against Kern County, Buena Vista and two

other entities, a water district and a canal company, in the latter part of June, before the 100 days had expired.

On September 17, 1975, an agent of Tenneco called plaintiff's counsel to inform him that the pipe was "used" by respondent West Kern. This was plaintiff's first knowledge of this fact or of the existence of West Kern.

West Kern presented testimony of the manager of Buena Vista, who testified he was not asked as to who owned the pipe in question, but had he been asked he would have given the information. The manager of deeds and contracts of Tenneco also testified at the hearing. He testified that he knew who controlled the pipe, but never received inquiry as to this issue.

Section 946.6 of the Government Code provides for a petition in the superior court for relief from the 100-day provision. By the terms of the section, the court is directed to grant the petition if the application to the board is made within a reasonable time not exceeding one year from the accrual of the cause of action and the failure to present the claim was through mistake, inadvertence, surprise or excusable neglect, unless the public entity establishes prejudice. The trial court makes an independent determination upon the petition, relying on affidavits and additional evidence received at the hearing.

After hearing the evidence and considering the allegations in the declaration of Dean Jelmini, the trial court denied the petition. Unfortunately, no reason is given for the denial. ■■ ■■■ There is no allegation or proof of prejudice to West Kern and the application to present the late claim was filed with the public entity a short eight days after discovery of the facts, leaving us to conclude that the order was based on a failure to prove mistake, inadvertence, surprise or excusable neglect.[1]

## DISCUSSION

Did the trial court abuse its discretion in denying the petition?

---

[1]"Although the statutes refer, as a requirement for relief, to 'mistake, inadvertence, surprise or excusable neglect,' only 'neglect' is qualified by the adjective 'excusable.' However, it is uniformly held that for relief on any or all of the stated grounds it must be shown that one's misconception was reasonable, or that it might have been the conduct of a reasonably prudent person under similar circumstances." (*Shaddox* v. *Melcher* (1969) 270 Cal.App.2d 598, 601 [76 Cal.Rptr. 80].)

■ Abuse of discretion is shown where uncontradicted evidence establishes cause for relief. Any doubts should be resolved in favor of the application (*Viles* v. *State of California* (1967) 66 Cal.2d 24 [56 Cal.Rptr. 666, 423 P.2d 818]). The showing required by a petitioner seeking relief because of mistake, inadvertence, surprise or excusable neglect is the same as required under section 473 of the Code of Civil Procedure (*Viles* v. *State of California, supra*).

■ The investigator made two grave errors. His attempt to obtain information from Buena Vista was unartful. He called and talked to a man without determining his identity or responsibility. He did not communicate the reason for the call or demonstrate its importance, but instead adopted the ruse of representing himself as a recreational fisherman. Nor did he approach the other obvious source of information, Tenneco, the firm which owned the land over which the canal and the pipe ran. West Kern complains that he also did not inquire at the Atlantic Richfield refinery, but this is not crucial since refinery employees one to one and one-half miles away from the accident site would be an unlikely source of information.

On the other hand, he did spend part of two days in investigation, including an on-site inspection and a check of the official records of the assessor's office. He also questioned four different public agencies in an attempt to obtain information.

We have no way of ascertaining the trial court's finding on whether Jelmini inquired of Buena Vista regarding the ownership of the pipe. As indicated earlier, his declaration did not mention this. In testimony at the hearing he affirmed that he did, but claimed that he inadvertently omitted it from the declaration. The trial court could have chosen to disbelieve the testimony at the hearing. ■ A trier of fact is not required to accept as true the sworn testimony of a witness where there is a variance between his testimony and his declaration. (See *Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468 [58 Cal.Rptr. 249, 426 P.2d 753]; *Clark* v. *City of Compton* (1971) 22 Cal.App.3d 522 [99 Cal.Rptr. 613].)

Resolving all conflicts in testimony against the plaintiff, we assume for the purposes of this opinion that he did not inquire of Buena Vista concerning the pipe, but only asked information about the canal.

Although the failure to make these inquiries was neglectful, and the general rule is that the client is chargeable with the omissions of his attorney (5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 147, p. 3720), the investigator's actions were not devoid of diligence.

West Kern cites *Black* v. *County of Los Angeles* (1970) 12 Cal.App.3d 670 [91 Cal.Rptr. 104]. In that case, plaintiff's attorney relied upon two newspaper clippings to establish the accident site. One of the two newspaper articles described the accident site as on Fullerton Road on a curve south of Aguirro Street, and the other article as on Fullerton Road near Rowland Heights. Neither was correct. Had he checked the California Highway Patrol report, he would have found the true location. The petition for relief from the provisions of the Government Code relating to claims against public entities was denied by the trial court and affirmed by the appellate court on the ground that the existence of such reports is commonly known to lawyers and laymen.

We are also cited to *Shaddox* v. *Melcher, supra,* 270 Cal.App.2d 598, wherein plaintiff was injured as a result of a three-car collision. One of the vehicles had a State of California insignia on the door and a diamond E license plate. A highway patrol report gave the owner of the vehicle as the State of California. Five and one-half months later, plaintiff served upon the State Board of Control her application to present a late claim against the State of California. Her attorney's declaration merely stated that the client did not tell him that one of the drivers was state employed and driving a state car, and that attempts to contact witnesses who might have had information were not successful. It was established at the hearing that the driver properly identified himself to the California Highway Patrol and that it made and filed a full report. An order denying the petition was affirmed, the court holding that no reason was given as to why the injured party did not convey the crucial information to her attorney and why the attorney did not make the obviously reasonable inquiry of the California Highway Patrol for information.

Such a cavalier approach to fact finding was not followed by the investigator in this case. He made a substantial investigation. His investigation was not sufficient, but neither was it inexcusable.

The investigator's error was less culpable than the attorney in *Nilsson* v. *City of Los Angeles* (1967) 249 Cal.App.2d 976 [58 Cal.Rptr. 20]. In that case, a claim was not filed within the statutory time because of a

calendaring error in the attorney's office. The record was devoid of any evidence of how the error occurred or of an established office procedure for avoiding such mistakes. Nevertheless, the trial court's denial of the petition for leave to file a late claim was reversed as an abuse of discretion.

A similar error was committed by the attorney in *Segal* v. *Southern California Rapid Transit Dist.* (1970) 12 Cal.App.3d 509 [90 Cal.Rptr. 720]. He failed to perform a routine arithmetical calculation properly and filed on the 101st day believing that he had filed on the 100th day. The trial court's denial of the petition was reversed.

An even more egregious error was committed by the attorneys in *Flores* v. *Board of Supervisors* (1970) 13 Cal.App.3d 480 [91 Cal.Rptr. 717, 55 A.L.R.3d 925], wherein the appellate court stated: "The legally salient fact for the purpose of this appeal is the candid admission of appellants' attorneys that the lateness of the claim was due to their failure to open a file which in turn would have reminded them of the 100-day limitation upon the presentation of appellants' claim." (*Id.,* at p. 483.) Yet an order denying a petition for relief was reversed.

In *Viles* v. *State of California, supra,* 66 Cal.2d 24, the plaintiff, relying on the advice of representatives of private parties, thought he had one year to file an action. He waited nine months before seeking the advice of an attorney.

In the case at bench, the plaintiff sought legal representation well within the 100-day period. The attorneys did more than open a file; extensive investigation was conducted. ▇ Courts "are somewhat loath to penalize a litigant on account of some omission on the part of his attorney, particularly where the litigant himself has acted promptly and has relied, as in the instant case, upon the attorney to protect his rights." (*Stub* v. *Harrison* (1939) 35 Cal.App.2d 685, 689-690 [96 P.2d 979].)

▇ An order denying relief runs counter to the law's policy encouraging trial and disposition on the merits. It is subject to closer appellate scrutiny than one granting relief, and doubts will be resolved in favor of the party attempting to get to trial to the end that wherever possible, cases may be heard on their merits. (*Viles* v. *State of California, supra,* 66 Cal.2d 24; *Nilsson* v. *City of Los Angeles, supra,* 249 Cal.App.2d 976, 979.)

■ In weighing a motion for relief, the absence of prejudice to the public entity should be considered. (*Segal* v. *Southern California Rapid Transit Dist., supra,* 12 Cal.App.3d 509; *Nilsson* v. *City of Los Angeles, supra,* 249 Cal.App.2d 976.) ■ ■ There is a complete lack of evidence of prejudice in this case. There is no showing that the pipe or canal or surrounding property had in any way been altered between the date of the accident and notification to West Kern.

Under the well-recognized policy of the law to liberally construe remedial statutes designed to protect persons within their purview, and the modern trend of decisions in favor of granting relief unless absolutely forbidden by statute (*Viles* v. *State of California, supra,* 66 Cal.2d 24; and see the discussion in 5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 147, pp. 3720-3723), we are of the opinion that the trial court's denial of the petition defeated the legislative objective and was an abuse of discretion.

■ Plaintiff places undue reliance on *Elias* v. *San Bernardino County Flood Control Dist.* (1977) 68 Cal.App.3d 70 [135 Cal.Rptr. 621]. The case simply holds that where the governing body of one public entity is also the governing body of another public entity, a claim against one of the public entities delivered to the governing body of both is substantial compliance with the claims statute. Any other conclusion would simply elevate form over substance since the function of the claims statute is fully satisfied if the governing body of the correct entity, whatever hat it may be wearing, is apprised of the claim.

The rationale of the *Elias* case is substantially similar to that of *Jamison* v. *State of California* (1973) 31 Cal.App.3d 513 [107 Cal.Rptr. 496], in which it was held that service of a timely claim upon an officer or employee of an agency allegedly responsible for the injury constitutes substantial compliance with the claims statute since the officer is under a duty to forward the claim to the entity of which he is an officer or employee. Both *Elias* and *Jamison* appear to stand for the general proposition that there will be substantial compliance with the claims statute when the claim either is actually received by the proper board or should be received because it was served on a subordinate of the proper board.

The position that service of a claim on the County of Kern in this case sufficed as a claim against West Kern County Water District is not well taken. There is nothing in the record that establishes that the members of

the Kern County Board of Supervisors are also the members of the board of West Kern.

 West Kern asserts that the petition was invalid because it did not comply with the requirement that it contain the required information as to the identity of the public agency and the place of occurrence. It further complains that there is a variance between the petition before the public entity and before the court.

Government Code section 946.6 only requires that the petition for an order for relief filed with the court have such information. There is no requirement that the application for leave to present a claim before the public entity have such information as a prerequisite to relief under section 946.6.

Although the application before the public entity was insufficient, the petition before the court, along with its attachments, adequately provide the requisite information. They establish that the injury occurred when plaintiff dived into Buena Vista canal and that the accident occurred "at this pipe" (West Kern's pipe). This adequately informed West Kern of the date, place and other circumstances of the occurrence and was a sufficient ". . . general description of the . . . injury . . . ." (Gov. Code, § 910, subds. (c), (d).)

The judgment is reversed.

Franson, Acting P. J., and Hopper, J., concurred.